**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TIERRANI CLARK-ESTEEN** | **CIVIL ACTION** |
| **VERSUS** | **NO: 24-2142** |
| **NEW ORLEANS REGIONAL TRANSIT AUTHORITY** | **SECTION: T (4)** |

### ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed by Defendant, New Orleans Regional Transit Authority ("RTA"). R. Doc. 37. RTA's Motion seeks dismissal with prejudice of all claims made against it by Plaintiff, Tierrani M. Clark-Esteen. Plaintiff opposes RTA's motion, R. Doc. 38, and RTA has filed a reply in support, R. Doc. 42. The Court has considered the parties' briefs, the record, and the applicable law. For the following reasons, RTA's Motion for Summary Judgment (R. Doc. 37) is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

This is an employment discrimination and retaliation action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. Plaintiff, Tierrani M. Clark-Esteen, is an African American female, over the age of thirty, who suffers from Crohn's disease and has worked in the New Orleans transit system since 2018. R. Doc. 1, pp. 1-2. Plaintiff was initially hired by Transdev Services, Inc. ("Transdev"), which operated the transit system until Defendant, New Orleans Regional Transit Authority ("RTA"), assumed operations in December 2020. Doc. 37-1, pp. 1-2 (citing R. Doc. 37-4, pp. 6, 29 (Plaintiff's Deposition)). At this time, "all Transdev employees

1

were laid off and required to apply to be rehired under the RTA."[1] *Id.* On January 4, 2021, Plaintiff was officially hired by the RTA as a Road Supervisor within the Fixed Route Department, which included bus and streetcar routes. *Id.* at p. 2.

Plaintiff alleges that, from approximately 2018 to 2020, she was subjected to inappropriate conduct by Safety Operations Supervisor Wayne Nelson. R. Doc 1, p. 2; R. Doc. 37-4, pp. 20. Specifically, she alleges that he "forced Plaintiff to facetime him while he groped himself, masturbated, and committed other sexual acts." *Id.* According to Plaintiff's deposition testimony, Mr. Nelson, "was apparently investigated and terminated by Transdev for his sexual harassment of several female employees." R. Doc. 37-1, p. 2 (citing R. Doc. 37-4, p. 22).

Plaintiff further alleges that, beginning in February 2022, she experienced disparate treatment with respect to seniority and scheduling. *See* R. Doc. 1, pp. 3-4. According to Plaintiff, a male Senior Operations Officer altered the existing seniority roster in favor of a male supervisor with less seniority, prompting Plaintiff to complain internally. *Id.*; R. Doc. 38-4, p. 1. Plaintiff also alleges that male supervisors were permitted to select supervisory details and exercise scheduling preferences that were denied to her. R. Doc. 38-4, p. 1.

Plaintiff took continuous leave under the Family and Medical Leave Act ("FMLA") beginning in October 2022. R. Doc. 38-4, p. 1. Following her return to work in January 2023, Plaintiff met with RTA management regarding her seniority concerns. *Id.* at p. 2. Plaintiff alleges that, during that meeting, she was informed that she would be transferred from the Fixed Route Department to the Paratransit Department. *Id.* Plaintiff contends that the transfer was inconsistent with seniority practices within the RTA and materially diminished her prestige, authority, and

---

[1] Plaintiff characterizes this occurrence as "continued employment following Defendant RTA's operational transition from Transdev in December 2020." R. Doc. 38, p. 2.

opportunities for advancement. R. Doc. 38, p. 3. Defendant, by contrast, maintains that the reassignment was a temporary, lateral transfer necessitated by operational needs and that Plaintiff's seniority was restored when she returned to the Fixed Route Department in July 2024. R. Doc. 37-1, pp. 12-13.

On January 4, 2023, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") under Title VII of the Civil Rights Act of 1964 for sex-based discrimination. R. Doc. 37-1, p. 4 (citing R. Doc. 37-5, pp. 3-5); R. Doc. 1, p. 4. On August 29, 2024, Plaintiff commenced the present action in this Court, asserting claims for sexual harassment, gender discrimination, racial discrimination, and disability discrimination under the ADA. *Id.* at pp. 2-6.

RTA's instant Motion for Summary Judgment seeks dismissal of all claims asserted by Plaintiff. R. Doc. 37. Plaintiff filed a memorandum in opposition, R. Doc. 38, and subsequently submitted a Notice of Supplemental Authority directing the Court to the United States Supreme Court's decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), which addressed the standard applicable to adverse employment actions arising from employee transfers, R. Doc. 41. Defendant subsequently filed a reply memorandum in further support of its Motion, which is now submitted before the Court.[2]

---

[2] Defendant argues in its reply that the Court should disregard Plaintiff's Notice of Supplemental Authority because it was filed after the deadline for filing an opposition. *See* R. Doc. 42, p. 9. The Court declines to do so. Plaintiff's filing merely directs the Court to controlling Supreme Court authority addressing the standard applicable to adverse employment actions arising from employee transfers. In any event, the Court has an independent obligation to apply governing law.

## II. LAW AND ANALYSIS

### a. *Summary Judgment Standard*

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). A court must hold "a factual dispute to be 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party and a fact to be 'material' if it might affect the outcome of the suit under the governing substantive law." *Voekel McWilliams Const., LLC v. 84 Lumber Co.*, 2015 WL 1184148, at \*5 (E.D. La. Mar. 13, 2015) (quoting *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989)).

When assessing whether a genuine dispute as to any material fact exists, courts "consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Accordingly, at the summary judgment stage, courts must view the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *See, e.g.*, *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 727 (5th Cir. 2018) (quoting *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 603 (2015); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Of course, "unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal quotation and

citation omitted). Although the movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, if it can carry that burden, the nonmoving party must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 323-24. This burden is not satisfied by a "metaphysical doubt as to the material facts" or only a "scintilla" of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)). Summary judgment must thus be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. As the United States Supreme Court has explained, "[i]n such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. Courts "do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Thus, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.' " *Id.* (quoting *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993)) (emphasis in original).

### b. *Plaintiff's Sexual Harassment Claims*

Defendant first seeks dismissal of Plaintiff's sexual harassment claims against RTA, arguing that it is not liable for alleged conduct which occurred while Plaintiff was employed by Transdev (i.e., before Defendant assumed operation of the transit system), that Plaintiff failed to exhaust her administrative remedies with respect to those claims, and that such claims have

prescribed. R. Doc. 37-1, pp. 6-11. Under Title VII, an employer's liability for workplace harassment "may depend on the status of the harasser." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). "If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Id.* However, a different set of rules applies if the harasser is a "supervisor," meaning that "he or she is empowered by the employer to take tangible employment actions against the victim." *Id.* Namely, an employer is strictly liable for a supervisor's harassment that "culminates in a tangible employment action." *Id.* "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S.742, 761 (1998). If no such "tangible employment action" is taken, then the employer may establish as an affirmative defense that "(1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities that the employer provided." *Vance*, 570 U.S. at 424. *See also Faragher v. City of Boca Raton*, 524 U.S. 776, 807-08 (1998).

Here, Plaintiff alleges that she was the victim of unwanted sexual advances from supervisor and co-worker Wayne Nelson from approximately 2018 through 2020. R. Doc. 1, p. 2; R. Doc. 37-4, p. 20. As noted by Defendant, this alleged conduct occurred before Defendant assumed operations of the transit system in December 2020. R. Doc. 37-1, p. 7 (citing R. Doc. 37-5, p. 1). Additionally, Plaintiff was not hired by Defendant until January 2021, R. Doc. 37-5, p. 1, and Mr. Nelson was terminated by Transdev in September 2020, R. Doc. 37-1, p. 7 (citing R. Doc. 37-4, p. 11). Thus, at the time Plaintiff alleges the conduct occurred, neither she nor Mr. Nelson were employed by Defendant, but rather by Transdev. Because Defendant was not the employer at the

time of the alleged conduct, it is not the proper entity for Plaintiff's sexual harassment claim, and this claim should be dismissed.[3] Accordingly, the Court will GRANT Defendant's Motion to the extent that it seeks dismissal of Plaintiff's sexual harassment claims.

### c. *Plaintiff's Disability and Racial Discrimination Claims*

Next, Defendant argues that Plaintiff's claims for disability discrimination under the ADA and her claim for racial discrimination must be dismissed, contending that neither claim is properly before the Court. R. Doc. 37-1, pp. 15-22. A plaintiff may not file an ADA or Title VII claim in federal court without first exhausting the statutorily required administrative remedies, which include the timely filing of a charge of discrimination with the EEOC. *Adams v. Columbia/HCA of New Orleans, Inc.*, No. 22-30389, 2023 WL 2346241, at *2 (5th Cir. Mar. 3, 2023) (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996) (per curiam)).[4] The Fifth Circuit has interpreted the scope of the exhaustion requirement as being defined "somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco v. Mineta*, 448 F.3d 783, 788-89 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970)). *See also Fine v. GAF Chem. Corp.* 995 F.2d 576, 577–78 (5th Cir.1993) (holding that administrative remedies were not exhausted with respect to sex discrimination because the incident sued upon was separate from the one raised in her EEOC charge); *Young v.*

---

[3] Having found that Plaintiff's sexual harassment claim should be dismissed because RTA is not the proper defendant, the Court will not address Defendant's arguments concerning exhaustion of administrative remedies and prescription.

[4] In *Dao,* the Fifth Circuit held that a plaintiff was required to exhaust all administrative remedies under the ADA before filing an action in federal court and noted that the ADA incorporates the procedures applicable to actions under Title VII, including the "fil[ing] of a timely charge with the EEOC, or with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice." *Dao,* 96 F.3d at 789.

*City of Houston*, 906 F.2d 177 (5th Cir.1990) (holding that sex discrimination claim had not been exhausted by plaintiff's EEOC charge of race and age discrimination).

Here, Defendant argues that because Plaintiff's EEOC charge "did not include *any* disability discrimination allegations or any facts as a basis for such claims," the "vague allegations regarding failure to accommodate and failure to promote" which she made in her Complaint are not properly before the Court. R. Doc. 37-1, pp. 16-17. In support, Defendant suggests that the scope of an EEOC investigation brought on Plaintiff's gender discrimination claims is "too narrow to prompt additional review of other unrelated claims not asserted," including claims of disability discrimination. *Id.* at p. 17. Thus, Defendant argues, these disability-based claims should be dismissed because they remain unexhausted and have prescribed.

In opposition, Plaintiff generally references her Crohn's disease but does not specifically address Defendant's exhaustion arguments or identify evidence demonstrating that a disability discrimination investigation would reasonably be expected to arise from the EEOC charge. *See* R. Doc. 38. Plaintiff's EEOC charge only checked the box for discrimination based on sex and stated that she believed she had been discriminated against "because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964." R. Doc. 38-4, pp. 1-2. Throughout the charge, Plaintiff complained of seniority issues, her transfer to the Paratransit Department, and disparate treatment relative to male supervisors. *Id.*

Plaintiff's EEOC charge does reference her use of "disability/continuous FMLA" leave and stated that she was not permitted to select her supervisory detail or vacation time while on leave. *Id.* at p. 1. However, nowhere in the charge did Plaintiff allege that she was discriminated against *because of her disability*, denied a reasonable accommodation, or otherwise subjected to unlawful conduct prohibited by the ADA. *Id.* at pp. 1-2. Instead, Plaintiff consistently attributed

8

the challenged conduct to sex discrimination and ultimately concluded that she had been discriminated against because she was female. *Id.* at pp. 1-2.

Under these circumstances, the Court concludes that an EEOC investigation into Plaintiff's charge would reasonably have focused on her allegations of sex discrimination and retaliation, not disability discrimination. Accordingly, Plaintiff failed to exhaust her administrative remedies with respect to her ADA claims, and Defendant is entitled to judgment as a matter of law on these claims.

Defendant additionally argues that Plaintiff cannot prevail on her ADA claims because she does not provide a factual basis for either the failure to accommodate claim or the failure to promote claim. R. Doc. 37-1, pp. 17-18. Specifically, Defendant highlights that Plaintiff does not claim that she requested accommodation or that the RTA denied any accommodation. *Id.* at p. 18. Having already found that Plaintiff's ADA claims should be dismissed due to failure to exhaust administrative remedies, the Court need not consider these remaining arguments.

Defendant also asserts that Plaintiff's racial discrimination claims should be dismissed due to her failure to exhaust administrative remedies. R. Doc. 37-1, p. 18. As with the disability discrimination claims, Defendant argues that the scope of the EEOC investigation into Plaintiff's gender discrimination claims is too narrow to prompt review of racial discrimination claims and that Plaintiff has offered no evidence regarding this claim. *Id.*

The Court agrees. Plaintiff's EEOC charge contains no allegations concerning race and does not identify any conduct allegedly motivated by Plaintiff's race. *See* R. Doc. 38-4, pp. 1-2. As discussed above, the charge consistently characterizes the alleged discrimination as sex based. Thus, an investigation into racial discrimination could not reasonably be expected to grow out of the allegations contained in the charge. *See Young*, 906 F.2d at 179-80. Accordingly, the Court

will GRANT Defendant's Motion to the extent that it seeks dismissal of Plaintiff's disability and racial discrimination claims.

### d. Plaintiff's Gender Discrimination Claims

Defendant next contends that Plaintiff cannot establish a prima facie case of sex discrimination. R. Doc. 37-1, pp. 11-14. "A prima facie case of sex discrimination requires an employee to demonstrate that '(1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably.'" *Dixon v. Garland*, No. 4:23-CV-19, 2024 WL 4948843, at *2 (quoting *Saketoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997-98 (5th Cir. 2022)). Here, Defendant concedes that Plaintiff has demonstrated the first two elements but argues that she is unable to satisfy the third and fourth elements. R. Doc. 37-1, pp. 11-14.

First, Defendant argues that Plaintiff did not suffer from an adverse employment action because her transfer from the Fixed Route Department to the Paratransit Department was a "temporary" and "lateral transfer." R. Doc. 37-1, p. 12. Specifically, Defendant claims that because Plaintiff "remained a supervisor throughout the period of her transfer," she was not demoted. Defendant additionally notes that, under RTA's practices, when a supervisor is placed on a temporary assignment, their "seniority status is restored upon return to their permanent department." *Id.* (citing R. Doc. 37-5, pp. 1-2 (Declaration of Kentrella Crawford)). Thus, "[w]hen Plaintiff was transferred back to the Fixed Route Department on July 8, 2024, her prior seniority status was fully restored." *Id.* at p. 13 (citing R. Doc. 37-4, pp. 56, 72). Furthermore, the transfer did not result in a payment reduction. *Id.* (citing R. Doc. 37-5, pp. 8-20).

Plaintiff disputes Defendant's characterization of her reassignment to the Paratransit

Department as a "lateral transfer." R. Doc. 38, p. 3. She instead argues that "the reassignment materially diminished her employment conditions, prestige, operational authority, and advancement opportunities," and she points to the deposition of Christopher Clark, "an experienced supervisor at RTA" for support. *Id.* (citing R. Doc. 38-3, p. 43 ("We could say she was knocked down a peg for sure.")). Plaintiff further argues that "Defendant's asserted nondiscriminatory explanations for its actions and [] the proffered justifications are pretextual." R. Doc. 38, p. 3.

Following her memorandum in opposition, Plaintiff filed a Notice of Supplemental Authority directing the Court to the Supreme Court's decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). R. Doc. 41. In *Muldrow*, the Supreme Court clarified that a plaintiff asserting a Title VII discrimination claim need not demonstrate that the challenged employment action caused a "significant" disadvantage. *Muldrow*, 601 U.S. at 355. Rather, a plaintiff need only show that the action caused "some harm respecting an identifiable term or condition of employment." *Id.*

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that genuine disputes of material fact exist regarding whether Plaintiff suffered an adverse employment action. Although Defendant emphasizes that Plaintiff retained her title and rate of pay and that her seniority was ultimately restored, Plaintiff has produced evidence suggesting that her reassignment adversely affected her prestige, authority, and opportunities for advancement. R. Doc. 38, p. 2. Under the standard articulated in *Muldrow*, a reasonable jury could conclude that Plaintiff's transfer resulted in harm to an identifiable term or condition of her employment.

Second, Defendant contends that Plaintiff cannot establish that a similarly situated male was treated more favorably. R. Doc. 37-1, pp. 13-14. Defendant argues that Plaintiff has failed to identify a proper comparator and that any purported comparators are not similarly situated under

Fifth Circuit precedent. *Id.* Plaintiff disagrees and points to evidence of male supervisors receiving preferential treatment with respect to seniority and scheduling. *See* R. Docs. 38, 38-4. For example, Plaintiff alleged in her EEOC charge that Shawn Davis, a male supervisor, was permitted to select a supervisory detail while on FMLA leave, whereas Plaintiff was denied that same opportunity. R. Doc. 38-4, p. 1. Plaintiff further alleges that male supervisors with less seniority received more favorable treatment. R. Doc. 1, pp. 3-4.

Although Defendant disputes whether these employees constitute valid comparators, the Court finds that genuine disputes of material fact preclude summary judgment on this element. Whether employers are similarly situated is a fact-intensive inquiry, *see, e.g.*, *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009), and resolution of the parties' competing characterizations would require the Court to weigh evidence and make credibility determinations, which it may not do at the summary judgment stage. Accordingly, viewing the evidence and all reasonable inferences in the light most favorable to Plaintiff, the Court concludes that genuine disputes of material fact remain concerning Plaintiff's gender discrimination claim. Therefore, the Court will DENY Defendant's Motion to the extent that it seeks dismissal of Plaintiff's Title VII sex discrimination claim.

### e. Plaintiff's Retaliation Claims

Finally, Defendant argues that Plaintiff cannot establish a claim for retaliation. R. Doc. 37-1, pp. 14-15. To establish a prima facie case of retaliation, a plaintiff must demonstrate "(1) she engaged in a protected activity; (2) 'she suffered an adverse employment action'; and (3) 'a causal connection exists between the protected activity and the adverse employment action.' " *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (quoting *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000)). A plaintiff can satisfy her prima facie burden of causation

12

"simply by showing close enough timing between [her] protected activity and [her] adverse employment action." *Id.* (quoting *Garcia v. Prof'l Cont. Servs., Inc.*, 938 F.3d 236, 242 (5th Cir. 2019)). Once a prima facie case is established, the burden shifts to the employer "to provide a 'legitimate, non-discriminatory reason' for the adverse employment action." *Id.* (quoting *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)). If the employer satisfies this burden, the plaintiff may then prove that the proffered reason is pretextual "by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence." *Id.* (quoting *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013)).

Here, Defendant contends that Plaintiff cannot establish the requisite causal connection between any protected activity and the challenged employment actions. R. Doc. 37-1, pp. 14-15. Defendant additionally maintains that Plaintiff's reassignment to the Paratransit Department was motivated by legitimate business considerations, including a shortage of supervisors within the department. *Id.* Plaintiff, however, contends that Defendant's asserted nondiscriminatory explanation is pretextual. R. Doc. 38, p. 3.

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that genuine disputes of material fact preclude summary judgment on Plaintiff's retaliation claims. Plaintiff disputes Defendant's explanation for her reassignment, contending that the transfer was retaliatory, and resolution of these competing explanations would require the Court to weigh evidence and assess credibility, which it may not do at the summary judgment stage. Accordingly, Defendant's Motion is DENIED to the extent that it seeks dismissal of Plaintiff's retaliation claims.

For the foregoing reasons,

**IT IS ORDERED** that Defendant New Orleans Regional Transit Authority's Motion for

Summary Judgment (R. Doc. 37) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** to the extent that it seeks dismissal of Plaintiff's sexual harassment, disability discrimination, and racial discrimination claims, and **DENIED** to the extent that it seeks dismissal of Plaintiff's Title VII sex discrimination and retaliation claims.

**IT IS FURTHER ORDERED** that Plaintiff's sexual harassment, disability discrimination, and racial discrimination claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 11th day of June, 2026.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE